**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

HOPE BOSCO,                                          :
                                                     :
      Plaintiff,                               :
                                                     :
v.                                                   :          CASE NO.: 1:12-CV-059 (WLS)
                                                     :
LINCARE INC., *et al.*                               :
                                                     :
      Defendant.                               :
_____:

## ORDER

Presently pending before the Court is Defendants Lincare and Josh Sale's Motion for Summary Judgment (Doc. 40). For the following reasons, Defendants Lincare and Josh Sale's Motion for Summary Judgment (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**.

## I.  RELEVANT PROCEDURAL AND FACTUAL BACKGROUND[1]

Plaintiff Hope Bosco filed a Complaint in the above-captioned matter on April 17, 2012. (Doc. 1.) Plaintiff's Complaint alleges claims for unlawful sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.*, and negligent supervision against Lincare, and intentional

---

[1] The following facts are derived from the Complaint (Doc. 1); Defendants' Answer (Doc. 9); Defendants' Statement of Undisputed Facts (Doc. 40-1) and Plaintiff's Responsive Statement of Facts (Doc. 48); Plaintiff's Statement of Genuine Issues of Material Fact That Remain in Dispute (Doc. 49) and Defendants' Response to Plaintiff's Statement of Genuine Issues of Material Fact that Remain in Dispute (Doc. 55), all of which were submitted pursuant to Local Rule 56; and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56.

infliction of emotional distress and anguish against Lincare, Inc. and Lincare employee, Josh Sale.[2] Per Plaintiff, on the night of November 11, 2009, Sale, her supervisor, grabbed her rear and attempted to kiss her, only to be rebuffed by Plaintiff. (*Id.* ¶ 14.) Sale also allegedly sent a text message to Plaintiff later that same night, at approximately 2:24A.M., asking if Plaintiff would come to his hotel room. (*Id.*) Plaintiff alleges that her rejection of Sale caused Sale to "beg[i]n a series of acts in an attempt to punish Plaintiff and in an attempt to undermine Plaintiff's authority over her subordinates." (*Id.* ¶ 15.) Plaintiff alleges that she reported Sale's actions to Paula Adams in Lincare's Human Resources Department on or about January 15, 2010, and was told the incident would be investigated. (*Id.* ¶ 16.) Plaintiff states that she provided Ms. Adams with copies of her phone records documenting the text from Sale. (*Id.* ¶ 17.) Per Plaintiff, despite her complaint, no action was taken by Lincare towards Sale, and the retaliatory conduct towards Plaintiff subsequently increased. (*Id.*) On May 5, 2010, after returning from work from medical leave, Plaintiff was placed on an action plan that required her to meet certain goals within 60 days. (*Id.* ¶ 21.) Plaintiff says her placement on this action plan was done out of retaliation. (*Id.* ¶¶ 23-24.) When Plaintiff failed to meet the 60-day goals, she was terminated on July 1, 2010. (*Id.* ¶ 25.) Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received her Right to Sue letter on January 18, 2012. (Doc. 1-1.)

---

[2] Lincare is the only proper defendant to Plaintiff's Title VII claims as "a Title VII claim may be brought against only the *employer* and not against an individual employee." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006).

On June 20, 2013, Defendants moved for summary judgment as to Plaintiff's Complaint. (Doc. 26.) According to Lincare, Plaintiff's tangible employment action sexual harassment claim fails because there was no temporal proximity between the alleged harassment and termination; Plaintiff's termination was based on grounds independent of the alleged harassment; the alleged harasser was not the ultimate decision maker; and Plaintiff has alleged that nepotism was the motivating reason for her termination. As to Plaintiff's retaliation claim, Lincare states it is entitled to judgment as a matter of law because she cannot establish a causal connection between her complaint about Josh Sale's advances and her eventual termination. Additionally, Lincare states that it had legitimate, non-retaliatory reasons for termination and Plaintiff cannot show that said reasons were pretextual. As to Plaintiff's negligent supervision claim, Lincare asserts that Plaintiff has failed to demonstrate that Lincare knew or should have known that Sale had a propensity to engage in sexual harassment. Finally, as to Plaintiff's mental anguish claim, *inter alia*, Lincare and Sale contend that the termination of an employee does not constitute extreme and outrageous conduct under Georgia law.

Plaintiff responded in opposition to Defendants' Motion for Summary Judgment on July 19, 2013. (Doc. 47.) In her opposition, Plaintiff abandoned her tangible employment action sexual harassment claim, arguing only that summary judgment should be denied as to her retaliation, negligent supervision, and intentional infliction of emotional distress claims. (*Id.* at 4 n.1.) Plaintiff states that both her action plan and termination constitute adverse employment action. Per Plaintiff, there is a causal

connection between the report of harassment and the adverse employment. Plaintiff notes that all of the relevant actors had knowledge of Plaintiff's complaint against Sale and her allegation of retaliation. She also notes that there is direct evidence, or at the very least, strong circumstantial evidence of Sale's intent to retaliate against her after learning of her complaint. In February 2010, Sale allegedly told Keith Adams, the former Center Manager for Lincare Moultrie Center, that Plaintiff had filed a sexual harassment charge against him. (Doc. 47-1 ¶ 8.) Sale then proceeded to tell Adams "that he hated that f*cking bitch [Plaintiff] and that he was going to place her on an action plan when she returned to work from her leave." (*Id.* ¶ 9.)

As for Sale's participation in the decision to terminate her, Plaintiff contends that when the harasser takes part in the decision-making process, there is a presumption that but for the harasser's recrimination, the termination would not have taken place to begin with. Plaintiff further argues that Lincare's legitimate, nonretaliatory reasons for her termination and placement on the action plan are in fact pretextual. As to her negligent supervision claim, Plaintiff states that Lincare was placed on notice that Sale was retaliating against her but failed to take appropriate action to prevent future retaliatory acts. Finally, regarding her intentional infliction of emotional distress claim, Plaintiff states that a reasonable person (i.e., a jury) could find Sale's retaliatory behavior towards her to be extreme and outrageous, thereby resulting in severe emotional distress. Plaintiff also states that Sale's extreme and outrageous conduct resulted in a spike in her blood pressure that caused her to take three months of medical

leave. Therefore, Plaintiff states that Defendants' Motion for Summary Judgment should be denied.

On August 2, 2013, Defendants submitted their Reply in Support of Motion for Summary Judgment. (Doc. 54.) Lincare first contends that Sale's alleged remark is not direct evidence of "retaliation" because it is subject to multiple interpretations and was unrelated to any adverse action. Lincare also asserts that Plaintiff's claim fails because the final decision makers did not have any retaliatory animus. Defendants also reiterated their arguments in defeat of Plaintiff's negligent supervision and intentional infliction of emotional distress claims.

The briefing for Defendants' Motion for Summary Judgment has now concluded, and the Court finds that Defendants' Motion for Summary Judgment is ripe for review.

## II.      Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of

persuading the Court on an essential element of the claim. *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. The Court must, however, grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

Having established the applicable summary judgment standards, the Court will proceed with its analysis.

## III.   DISCUSSION

### A.   Title VII Retaliation Claim

Under Title VII, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e-3(a)]." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 956 (11th Cir. 1997) (citing 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: 1) she engaged in statutorily protected activity; 2) suffered an adverse employment action; and 3) the adverse action was causally related to plaintiff's protected activities. *Id.* at 959. Once "a plaintiff establishes a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. If the employer accomplishes this, the plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *See Jiles v. United Parcel Serv., Inc.*, 360 F. App'x. 62, 66 (11th Cir. 2010) (internal citations omitted).

Plaintiff first contends that the action plan Lincare placed her on constitutes adverse employment action. (Doc. 47 at 10.) Citing *Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006), Plaintiff asserts that the question of whether her placement on the action plan constitutes adverse employment action is one for a jury to decide, with the jury assessing whether a reasonable person in plaintiff's position would have felt dissuaded from making or supporting a charge of

discrimination. (Doc. 47 at 11.) Under these standards, Plaintiff contends that a jury could find that the action plan was adverse employment action. Plaintiff points out that focus center goals are typically annual goals. (*Id.* at 11) (citing Paula Adams' deposition, Doc. 40-13 at 19, 27:14-16.) Plaintiff states that, in her case, however, she was placed on an abbreviated action plan that required her to meet the action goals in sixty days, rather than in twelve months. (*Id.*) Plaintiff also notes that Adams testified that a manager is not always fired for not meeting the established goals. (Doc. 47 at 11) (citing Adams' deposition, Doc. 40-13 at 19, 27:10-13.)

In opposition, Lincare asserts that Plaintiff's placement on the action plan on May 5, 2010, did not constitute adverse employment action. In support of this position Lincare cites *Hall v. Siemens VDO Automotive*, 481 F. App'x 499 (11th Cir. 2012). (Doc. 40-2 at 10 n.2.) In *Hall*, the Eleventh Circuit stated that the placement of plaintiff on a Performance Improvement Plan ("PIP"), *inter alia*, was not sufficient "adverse employment action." *Hall*, 481 F. App'x at 505. Plaintiff acknowledges *Hall*, but asserts that *Hall* is not dispositive to the issue of whether her placement on the action plan constitutes sufficient adverse employment action because *Hall* gives no indication as to the type of performance plan used, the basis for its imposition, or whether or not the performance goals actually changed the terms of employment for the plaintiff in *Hall*.

The Court agrees with Plaintiff in that *Hall* does not stand for the proposition that an action plan or some other form of performance plan can never constitute adverse employment action. The relevant inquiry under *Burlington* is whether "a reasonable employee would have found the challenged action materially adverse,

8

which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (additional quotations and citations omitted). By making the standard one of "reasonableness," the Supreme Court set out to ensure that challenged action is one that is considered against *all circumstances* without regard for formulaic classifications of employment actions. *Id.* at 69 ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances.") As noted by the Supreme Court, when assessing what qualifies as adverse employment action, "[c]ontext matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* Thus, the Court must assess whether the instant action plan could constitute adverse employment action, considering all the relevant circumstances. Here, after reviewing the evidence, the Court finds that it cannot conclude that, as a matter of law, the action plan applied to Plaintiff could not have been an adverse employment action.

When Plaintiff returned from medical leave on May 5, 2010, she was placed on a 60-day action plan, though focus center goals are typically annual goals. Defendant does not deny that focus center goals are typically annual, but contends that Plaintiff was not prejudiced by the 60-day schedule because her goals were reduced proportionately to 60 days. (Doc. 54 at 13 n.4.) Defendant did not state, however, how it was determined that Plaintiff would only have 60 days, following a three-month

absence, to meet performance goals that if not met, could result in termination. Though Defendant states that other employees have been placed on 60- and 30-day action plans, Defendant did not articulate on what basis action-plan timetable decisions are made. In fact, the affidavit submitted by Adams reflects that she stated: "[d]ue to [Plaintiff's] workers' compensation claim and complaint of harassment, I stated my opinion that we should give Bosco the full term of the probationary plan to demonstrate improvement and meet the requirements of the job." (Doc. 40-16 ¶ 47.) In the Court's view, this statement shows that even Lincare's Human Resource Manager was concerned about the implications of an abbreviated action-plan period.[3] Furthermore, the record does not indicate why Sale and Drake went against Adams' recommendation that Plaintiff be given the full probationary term. A jury could very well find that while 60-day goals might be otherwise reasonable under other circumstances, the instant 60-day goals were implemented to be unattainable as applied to an employee who was absent for three months preceding the establishment of said goals. Therefore, for the purpose of summary judgment, the Court finds that Plaintiff has presented enough facts to create a genuine issue of material fact as to whether her action plan was an adverse employment action.[4]

---

[3] Even if the Court's interpretation of Ms. Adams' statement is incorrect—that Ms. Adams did not intend to imply that she thought Plaintiff should be given a 12-month probationary period when she stated that Plaintiff should be given the "full term of the probationary plan"—this does not change the Court's view that there are genuine issues of material fact as to whether the 60-day action plan, as applied to Plaintiff, was an adverse employment action. As the Court notes later in the paragraph, putting a newly returned employee on a 60-day action plan, under the circumstances, is sufficient to raise some concerns.

[4] As the Eleventh Circuit notes, "*Burlington* also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered "materially adverse" to him and thus constitute adverse employment actions." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (citing *Burlington*, 548 U.S. at 71).

The Court also finds that Plaintiff has shown evidence of a causal connection between her report of sexual harassment and her placement on an action plan that precipitated her termination. In order to satisfy the causal-link element, "a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citations omitted). "A plaintiff satisfies this element if [s]he provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse . . . action." *Id.* (internal quotations and citations omitted). "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Id.* (citation omitted). The Supreme Court has made clear that for "mere temporal proximity" to be sufficient it "must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted).

Plaintiff reported Sale's alleged harassing conduct to Adams during a phone call on January 18, 2010. (Doc. 40-1 ¶ 59.) Plaintiff went out on medical leave on February 1, 2010. (*Id.* ¶ 89.) On the first day of her return from medical leave, May 5, 2010, Plaintiff was placed on the 60-day action plan that the Court has concluded that a reasonable person could find is materially adverse. Lincare attempts to argue that the three-month lapse between the January 18, 2010 complaint and the May 5, 2010 implementation of the action plan is not sufficiently close to create a jury issue on causation. (Doc. 40-2 at 17.) This argument is slightly disingenuous in that it is obvious that Plaintiff could not have been placed on an action plan while she was out on FMLA leave. Plaintiff was

placed on the action plan at the first available opportunity—her first day back to work. Further, it is unreasonable and illogical to conclude that any absence from the workplace by Plaintiff of any nature or duration would serve to sever the connection between the complained of harassment, no matter how severe or explicit, from a later adverse action taken at the earliest opportunity. Therefore, the three-month lapse here is not of the type that would necessarily destroy the causal link.

Lincare also contends that Plaintiff's performance problems predating the alleged sexual harassment severed the causal connection, if any. (Doc. 40-2 at 17-18.) In support of this argument, Defendant relies on *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1376-77 (S.D. Fla. 2001), for the proposition that performance problems occurring before the protected activity can sever the connection. The Court finds Lincare's reliance on *Gaston* to be unpersuasive to destroy Plaintiff's *prima facie* case. First, as noted above, in the Eleventh Circuit, a close temporal proximity alone is sufficient circumstantial evidence to establish a causal connection for purposes of a prima facie case. *Higdon*, 393 F.3d at 1220. As the Court noted above, if Plaintiff's three-month medical leave (February 1, 2010-May 5, 2010) is excluded from consideration, there is only a short lapse of time between Plaintiff's January 18, 2010 complaint of harassment and the May 5, 2010 action plan implementation. Therefore, Plaintiff can rely on this close temporal proximity alone. Additionally, while Lincare contends there were pre-existing performance issues, Lincare has failed to present evidence that an action plan to remedy these performance problems was contemplated prior to Plaintiff's allegation of sexual harassment or before Sale told Keith Adams that "he hated

[Plaintiff] and that he was going to place her on an action plan when she returned to work from her leave."[5] (Doc. 47-1 ¶ 9.) As such, any performance problems predating Plaintiff's report of sexual harassment do not sufficiently destroy the inference of causation, that which is also supported by evidence in addition to the close temporal proximity.[6] Accordingly, Plaintiff has shown adequate evidence of causation.

As to the last phases of the Court's analysis—whether Defendant has established a legitimate, nonretaliatory reason for the adverse employment action and whether Plaintiff has shown that the reasons are a pretext for retaliation—the Court finds that Plaintiff has also met her burden of showing that there are genuine issues of disputed material fact. As its legitimate, nonretaliatory reason, Defendant states that Plaintiff was placed on the action plan, and subsequently terminated, for performance reasons. While Plaintiff points to a number of facts to "cast sufficient doubt" on the "performance concerns" Defendant references, the Court finds one statement referenced by Plaintiff to be, by itself, sufficient to allow Plaintiff's retaliation claim to get to a jury—Sale's statement to Keith Adams that "he hated [Plaintiff] and that he was going to place her

---

[5] Had Lincare presented evidence that it contemplated the action plan prior to Plaintiff's complaint of sexual harassment, the adverse act would have been contemplated prior to the protected activity, even if not implemented. *Keen v. Regional Emergency Med. Servs. of GA, Inc.*, 913 F. Supp. 2d 1374, 1380 n.6 (M.D. Ga. 2012) ("The one exception to the rule that temporal proximity alone can raise an inference of causation is when there is unrebutted evidence that the decision maker did not know that the employee engaged in protected conduct.") (citing *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1355-56 (11th Cir. 1999))); *see also Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, Griffin must show that the adverse act followed the protected conduct.")

[6] It is also important to note that *Gaston* cites to *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999), for the proposition that complaints about the plaintiff received before and after the protected conduct can sever the causal connection. As the district court in *Gross-Jones v. Mercy Med.*, 874 F. Supp. 2d 1319, 1345-46 (S.D. Ala. 2012) (citing *Kiel*, 169 F.3d at 1136), pointed out, "in the Eighth Circuit, however, unlike the Eleventh Circuit, '[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.'" Thus, because in the Eleventh Circuit close temporal proximity alone can be sufficient, reliance on a case citing to *Kiel* does not trump the temporal-proximity factor.

on an action plan when she returned to work from her leave." (Doc. 47-1 ¶ 9.) Plaintiff contends that this statement provides at the very least, strong circumstantial evidence, of Sale's intent to retaliate against her after learning of her complaint. Defendant contends that this "alleged remark only suggests retaliation" since Sale did not specifically say that he was going to "put [Plaintiff] on an action plan *because* she complained about him." (Doc. 54 at 6) (emphasis in the original). Per Defendant, this statement can support retaliation *or* it can support a conclusion that Sale wanted to put Plaintiff on an action plan because the Albany center was not doing well. Although the dueling interpretations surrounding this statement may not be direct evidence of discrimination, as Defendant notes, they are sufficient to cast doubt on the legitimacy of Lincare's reasons for placing Plaintiff on the action plan. As conceded by Lincare, Sale's statement could support an inference that Plaintiff's placement on the action plan was done out of retaliation. Therefore, Plaintiff has met her burden of showing that there is sufficient evidence to create a jury question as to whether Lincare's reasons for placing her on the action plan—the action plan that led to her eventual termination—are pretextual. Accordingly, the Court cannot find that Plaintiff's Title VII retaliation claim fails as a matter of law.

**B.      Intentional Infliction of Emotional Distress**

Under Georgia law, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate the conduct in question: (1) was intentional or reckless, (2) was extreme and outrageous, (3) caused the emotional distress, and (4) the emotional distress was severe. *Ashman v. Marshall's of MA, Inc.*, 535 S.E.2d 265, 267 (Ga.

App. 2000). Where the claim involves "[t]he existence of a special relationship between the actor and victim, such as that of employer to employee, may make otherwise non-egregious conduct outrageous." *Trimble v. Circuit City Stores, Inc.*, 469 S.E.2d 776, 778 (Ga. App. 1996).

Defendant argues that Plaintiff's emotional distress claim fails because she cannot satisfy the second and fourth elements of her claim. Per Defendant, under Georgia law, termination of an employee is generally not considered extreme and outrageous conduct. (Doc. 40-2 at 24) ("The termination of an employee generally is not extreme and outrageous conduct, no matter how stressful the termination is for the employee.") (citing *Scott v. Rite Aid of Ga., Inc.*, 918 F. Supp. 2d 1292, 1305 (M.D. Ga. 2013))). As to the fourth element, Defendant contends that Plaintiff has failed to present any evidence of a "severe" injury resulting from the alleged emotional distress.

In support of her claims, Plaintiff contends that the retaliatory "campaign" Sale initiated against her constitutes extreme and outrageous conduct and that, in addition to being outrageous, Sale's and Lincare's actions caused physical and pecuniary injures. (Doc. 47 at 19.) The problem with this contention is two-fold. First, "[a] claim for emotional distress damages caused by negligence must be supported by evidence that the plaintiff suffered an impact resulting in physical injury or pecuniary loss resulting from an injury to the person." *Phillips v. Mt. Zion-Morrow, LLC*, 699 S.E.2d 58, 60 (Ga. App. 2010). The physical injury of which Plaintiff complains is a spike in her blood pressure. (Doc. 47 at 19.) There are, however, no medical records to corroborate Plaintiff's statement that her blood pressure was 170/100, other than Plaintiff's own

statement in her deposition. The pecuniary loss Plaintiff cites is the fact that she was "forced to take approximately three months of medical leave before being cleared to return to work." (*Id.* at 19-20.) Under Georgia law, for the pecuniary loss exception to the impact rule to apply to a plaintiff bringing a claim for negligence, the pecuniary loss must result "from an injury to the person which is not physical." *Phillips*, 699 S.E.2d at 61. Plaintiff's medical leave, even if a pecuniary loss, was incurred because of the alleged emotional distress. In this circumstance, Plaintiff's alleged pecuniary loss does not form the basis for the negligence claim because "it is itself a form of emotional distress damage as opposed to pecuniary loss occurring 'as [the] result of a tort involving an injury to the person even though this injury may not be physical [such as an injury to reputation].'" *Owens v. Gateway Mngmt. Co.*, 490 S.E.2d 501, 502 (Ga. App. 1997). Therefore, Plaintiff has failed to present sufficient evidence of a physical injury/pecuniary loss.

Even if Plaintiff's three-month medical leave to recover from an arterial injury and spike in her blood pressure allegedly observed during a doctor's visit for neck pain on January 29, 2010, were sufficient for the severity prong, Plaintiff has failed to submit any evidence to support her allegation that Sale engaged in a retaliatory campaign comprised of extreme and outrageous conduct that predated her "injuries." In her opposition brief, Plaintiff does state that she sent an email to Adams on January 28, 2010, the day before she went out on medical leave, "expressing her concern that Sale was making her job harder since she filed the harassment complaint against him." (Doc. 47 at 6.) The email that Plaintiff references, however, makes no mention of Sale

engaging in any conduct directed towards Plaintiff. The email opens with "I'm not sure why Robin Dennis is giving me such a hard time" and discusses other employees' conduct, not Josh Sale's. (Doc. 40-20 at 2.) While Plaintiff did say "I feel like since I made the complaint on Josh it has been so difficult to do my job," she did not assert that Sale was responsible for the alleged difficulties. (*Id.*) Therefore, Plaintiff has failed to submit any evidence to show "extreme and outrageous" conduct predating her medical leave. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

C.    **Negligent Supervision**

Because Plaintiff's intentional infliction of emotional distress claim fails, Lincare is also entitled to summary judgment as to Plaintiff's negligent supervision claim. Under Georgia law, "an employer may be held liable [for negligent supervision] only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Leo v. Waffle House, Inc.*, 681 S.E.2d 258, 262 (Ga. App. 2009) (citation omitted). Importantly, however, a claim for negligent supervision is a derivative of an underlying tort claim. *See Canty v. Fry's Elecs., Inc.*, 736 F. Supp. 2d 1352, 1379 (N.D. Ga. 2010) (citing *Ekokotu v. Boyle*, 294 F. App'x 523, 527 (11th Cir.2008) and *Phinazee v. Interstate Nationalease, Inc.*, 514 S.E.2d 843, 846 (Ga. App. 1999)). Georgia law provides no distinct tort for harassment, retaliation or discrimination. *Id.* at 1379-80 (citations omitted). "Georgia Courts have merely recognized discriminatory, retaliatory or harassing conduct may form the basis of an

intentional infliction of emotional distress claim." *Id.* at 1380 (citing *Trimble v. Circuit City Stores, Inc.*, 469 S.E.2d 776, 778 (Ga. App. 1996) and *Yarbray v. Southern Bell Tel. & Tel. Co.*, 409 S.E.2d 835, 838 (Ga. 1991)). Here, because Plaintiff's underlying tort claim—intentional infliction of emotional distress—fails, her negligent supervision claim fails as well. *See, e.g., Robinson v. Intercorp*, 512 F. Supp. 2d 1307, 1316 (N.D. Ga. 2007); *Hajhossein v. Mayor & City Council of Statesboro, GA*, No. 6:09-cv-48, 2010 WL 2179147, at *3 (S.D. Ga. May 28, 2010). As such, Lincare is entitled to judgment as a matter of law as to Plaintiff's negligent supervision claim.

## CONCLUSION

For the foregoing reasons, Defendants Lincare and Josh Sale's Motion for Summary Judgment (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**. Lincare's Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim is **DENIED**. Lincare and Josh Sale's Motion for Summary Judgment is **GRANTED** as to Plaintiff's state-law claims for negligent supervision and intentional infliction of emotional distress.

Accordingly, the Court will set this case for jury trial as to Plaintiff's Title VII retaliation claim for the June 2014 Trial Term by separate Order.

**SO ORDERED**, this  27th  day of March 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

18